RECEIVED
IN LAKE CHARLES, LA

SEP 21 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| EVIA P. HODGE | : | **DOCKET NO. 2:05 CV 0707** |
| VS. | : | **JUDGE MINALDI** |
| JOHN E. POTTER, Postmaster General, United States Postal Service | : | **MAGISTRATE JUDGE WILSON** |

### MEMORANDUM RULING

Presently before the court are two Motions for Summary Judgment [docs. 14 and 15] filed by the defendant, the United States of America ("United States"). These motions have been opposed by the plaintiff [doc. 22] and the United States filed a reply [doc. 26]. In the first Motion for Summary Judgment [doc. 14], the United States asks for summary judgment on the plaintiff's claims for sexual harassment under Title VII. The United States also alleges that this court lacks subject matter jurisdiction and it is, therefore, entitled to summary judgment as a matter of law [doc. 15].

Facts

The plaintiff, Evia P. Hodge ("Hodge"), filed a complaint on April 21, 2005, seeking compensatory damages, attorneys' fees, and costs from the United States. Hodge alleges sexual harassment and retaliation for engaging in the EEO process.

Hodge has been employed by the United States Postal Service as a customer relations coordinator from approximately 1999 to date. She alleges that beginning in approximately January

1

1999,[1] and continuing until February 2003, she was subjected to sexual harassment in her workplace. The complaint alleges that Jeffery Wakefield ("Wakefield"), Acting Manager of Maintenance, and later the Officer in Charge[2] committed assorted discriminatory acts and made statements directed at the plaintiff. Wakefield, as the Acting Manager of Maintenance, did not supervise Hodge.[3] She reported directly to the Postmaster, Carol Landry ("Landry").[4] Wakefield did, however, serve as the Officer in Charge for a limited time period in 2002. Wakefield was Hodge's supervisor during that time.

In 1999 Hodge shared an office with Karen Miller.[5] The office was located next to Landry's office and served as an anteroom.[6] Hodge testified that her office was like a meeting place.[7] Subsequently, Hodge was moved into her own office.[8]

Hodge alleges that Wakefield committed several continuing acts of harassment, including:

- asking Hodge out on dates;

---

[1]    In the deposition taken January 20, 2006, Hodge stated that she did not recall a specific incident in January 1999, but she reasoned that the harassment could have occurred during that month because that is when she was moved to the Lake Charles office, where Jeffery Wakefield was also stationed. (Hodge depo. p. 24).

[2]    Wakefield was Acting Officer in Charge for approximately two months in 2002. Hodge depo. pp. 94-95, 150.

[3]    Hodge depo. p. 25.

[4]    Hodge depo. p. 25.

[5]    Hodge depo. p. 26.

[6]    *Id.*

[7]    *Id.* at p. 27.

[8]    *Id.*

- peering down her blouse;

- getting on his knees and begging favors from her;

- remarked that Hodge has "gorgeous legs;"

- told sexually inappropriate jokes;

- discussed his sexual encounters with other women;

- touching her on her arm, shoulders and knees;

- putting his arm around her shoulder; and

- leaning up against Hodge as she sat at her desk.[9]

Hodge also alleges that Wakefield sent her flowers at work on two occasions.

Hodge alleges that on October 31, 2000, she dressed as a cat for the Halloween party. Wakefield allegedly remarked that he would like to have some of that "pussy."[10] In September 2002, Wakefield allegedly asked Hodge to attend a Renaissance Festival with him, remarking that he would like to see her in nothing but chains like the other women attending the festival.[11] On Halloween 2002, Hodge dressed as "biker girl." Wakefield allegedly advised her that he was into whips and chains and he asked if she was interested.[12]

In November 2002, Hodge and another postal employee were having lunch when Wakefield approached them and advised that he was about to become the Officer in Charge ("OIC") and Hodge

---

[9]  Plaintiff's List of Undisputed Facts.

[10]  Complaint, ¶13.

[11]  Complaint, ¶14.

[12]  Complaint, ¶15.

would have to do exactly as he said.[13]

During a mail count in February 2003, Hodge alleges that Wakefield showed her a picture of a girl in a bikini and remarked that he would like to see her in "that."[14]

Hodge alleges that these continuous acts of harassment and discrimination caused her emotional distress, damage to reputation, and other loss and injury.[15]

Hodge testified that she believes that she spoke to Landry about Wakefield in either 1999 or 2000.[16] She told Landry that she found Wakefield offensive and that he was asking her out.[17] Hodge did not tell Landry that Wakefield leaned on her or touched her. Hodge did not subsequently tell Landry about Wakefield showing her the picture during the 2003 mail count.

Hodge also spoke to James Taylor, Manager of Postal Service Operation in 2002 and complained about Wakefield being selected to fill in while Landry was out because Hodge believed Wakefield to be incompetent and "...not fit to be a supervisor or manager, much less Postmaster over 400 people....".[18] Hodge did not mention Wakefield's alleged sexual harassment during this conversation.[19]

---

[13]    Complaint, ¶17.

[14]    Complaint, ¶18.

[15]    Complaint, ¶32.

[16]    Hodge depo. p. 55.

[17]    *Id.*

[18]    *Id.* at p. 98.

[19]    *Id.* at 99.

4

Hodge did not contact an EEO counselor until February 27, 2003.[20]

Hodge also claims that she has been subjected to retaliation for filing her EEO claim.  She alleges that:

- an Acting Manager announced to employees that the allegations of sexual harassment had been dismissed;
- the Postal Service excluded her from staff meetings that she had previously attended;
- she was reassigned during mail count in 2004;
- the maintenance department canceled an order for cleaning her carpet; and
- a Supervisor, when giving a talk on sexual harassment, in response to a statement made by an employee, stated that Wakefield had done nothing wrong and that Wakefield had rebuffed Hodge's advances.[21]

Hodge testified that her work hours, pay and position have not changed.[22]

## Summary Judgment Standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with

---

[20]     Defense Exh. B.

[21]     Complaint ¶¶ 24-29.

[22]     Hodge depo. p. 108.

affidavits, that demonstrate the absence of a genuine issue of material fact. [23] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

Analysis

A five-factor test is utilized to determine if the plaintiff had established a viable cause of action in a sexual harassment claim:

(1) The employee belongs to a protected group;

---

[23] FN1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

(2) The employee was subject to unwelcome sexual harassment;

(3) The harassment complained of was based upon sex;

(4) The harassment complained of affected a "term, condition or privilege of employment," i.e., the sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and

(5) Respondent superior, i.e., that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[24]

With the release of *Burlington* and *Faragher*[25] this test was modified so that employees bringing a Title VII sexual harassment case alleging that a supervisor with immediate (or successively higher) authority over the employee harassed the employee need only satisfy the first four elements of the test outlined above.[26] Once the plaintiff employee makes this showing, an "employer is subject to vicarious liability to a victimized employee." *Faragher*, 524 U.S. 775, 118 S.Ct. at 2292-93.

In the case at bar, Wakefield did not supervise Hodge for the majority of the time in which sexual harassment is alleged. Wakefield supervised Hodge for a limited time in 2003.[27] So, the court will address the five elements of sexual harassment and the *Faragher* defense.

It is undisputed that the plaintiff belongs to a protected group, that she was subject to

---

[24]     *Jones v. Flagship International*, 793 F.2d 714, 719-720 (5th Cir.1986).

[25]     *Burlington Ind. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

[26]     In cases where the harasser is a co-worker, as opposed to a supervisor, the full test outlined in *Jones v. Flagship International*, 793 F.2d 714, 719-720 (5th Cir.1986) is applicable. *See Williamson v. City of Houston*, 148 F.3d 462, 464 (5th Cir.1998) (applying fifth factor).

[27]     January 13, 2003 through February 23, 2003.

unwelcome sexual harassment, and that the harassment complained of was based on sex. The key issues in the case at bar are whether the harassment complained of affected a term, condition or privilege of employment and ( for the time that Wakefield was not acting as Hodge's supervisor) whether that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

Although Wakefield was temporarily Hodge's supervisor in 2003, "Title VII does not make employers 'always automatically liable for sexual harassment by their supervisors.' " [28] An employer is vicariously liable for a supervisor's sexual harassing behavior where a tangible employment action is taken against the victim-employee by the harassing supervisor.[29] Where there is no tangible employment action, the employer may avoid liability by raising a two-pronged affirmative defense: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[30]

This court must first address the issue of whether or not the alleged facts, viewed in the light most favorable to Hodge, the non-moving party, affected a term, condition or privilege of employment. For harassment to affect a term, condition, or privilege of employment, it must be subjectively and objectively abusive.[31] The harassment Hodge suffered was subjectively abusive to

[28]     *Faragher v. City of Boca Raton,* 524 U.S. 775, 792, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)(quoting *Meritor,* 477 U.S. at 72, 106 S.Ct. 2399).

[29]     *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275 (1998).

[30]     *Id.*

[31]     *Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317, 325 (5th Cir.2004) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993)).

her, so we turn to whether that harassment was also objectively abusive.

Whether an environment is objectively hostile or abusive is determined by considering the totality of the circumstances.[32] Although no single factor is required, courts look to the frequency and severity of the discriminatory conduct, whether it is physically threatening or humiliating as opposed to a mere offensive utterance, whether it unreasonably interferes with an employee's work performance, and whether the complained-of conduct undermines the plaintiff's workplace competence.[33]

We look now to the factors that are often used in determining whether a workplace environment is objectively hostile or abusive. As to the severity of the conduct, Wakefield's comments were discriminatory. As to their frequency, Hodge alleges that Wakefield:

- came to office "almost daily";[34]

- asked for dates on a "weekly, ongoing" and "consistent" basis;[35]

- touched her during staff meetings;[36] and

- told jokes that weren't "clean jokes."[37]

---

[32]     *Harris*, 510 U.S. at 23.

[33]     *Hockman*, 407 F.3d at 325-26; *Equal Employment Opportunity Commission v. Nexion Health At Broadway, Inc.*, 2006 WL 2528432, *2 (C.A.5 (Tex. (C.A.5 (Tex.), 2006).

[34]     EEOC Admin Hearing Transcript, p. 26.

[35]     EEOC Admin Hearing Transcript, pp. 27-29.

[36]     EEOC Admin Hearing Transcript, p. 32.

[37]     Hodge depo., Jan. 20, 2006, p. 72.

The United States asserts that other than these vague and unsubstantiated assertions, the plaintiff has not introduced competent summary judgment evidence of when these alleged events occurred.

Although these were allegedly more than isolated instances of harassment, the plaintiff has not demonstrated that they were so frequent as to pervade the work experience of a reasonable postal employee. Wakefield's harassment was not physically threatening or humiliating; it consisted primarily of utterances that Hodge found offensive.

These circumstances alone cannot support a hostile work environment claim absent some objectively detrimental impact on Hodge's work performance. There is no genuine issue of material fact that the harassment Hodge suffered did not objectively interfere with her work performance or undermine her workplace competence. Because the plaintiff fails at Step 4 of the analysis, the court need not consider Step 5 or the *Faragher* defense.

Hodge also asserts retaliation. To establish a prima facie case for retaliation, Hodge must show that (1) she engaged in "protected activity," (2) she suffered an adverse employment action as a result of partaking in the protected activity, and (3) there was a "causal link" between the protected activity and the adverse employment action.[38] Once the showing is made, the burden shifts to the defendant, who must produce a nondiscriminatory reason for the adverse employment action.[39] The plaintiff may rebut by showing that the reason provided by the defendant for taking the adverse employment action is pretextual.[40]

---

[38]    *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir.2003).

[39]    *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir.1992).

[40]    *Id.*

10

It is undisputed that Hodge engaged in protected activity when she filed a complaint with the EEOC. At issue are the second and third prongs of the test. Did Hodge suffer an adverse employment action and was there a causal link between the challenged employment action and her protected activity? If Hodge fails to establish either of these elements, summary judgment is appropriate.

Hodge contends that she suffered an adverse employment action by the Postal Service when

- an Acting Manager announced to employees that the allegations of sexual harassment had been dismissed;

- the Postal Service excluded her from staff meetings that she had previously attended;

- she was reassigned during mail count in 2004;

- the maintenance department canceled an order for cleaning her carpet; and

- giving a talk on sexual harassment, in response to a statement made by an employee, a supervisor stated that Wakefield had done nothing wrong and that Wakefield had rebuffed Hodge's advances.

However, Hodge's characterization of these actions as adverse employment actions is misplaced. It is well settled that the Fifth Circuit takes a "narrow view of what constitutes an adverse employment action."[41] That is, adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.[42]

---

[41] *Breaux v. City of Garland,* 205 F.3d 150, 157 (5th Cir.2000).

[42] *Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 657 (5th Cir.2002).

Under this framework, Hodge did not suffer any adverse employment action.[43] The Acting Manager who made the statement that her allegations had been dismissed was promptly disciplined. It is clear from Hodge's own testimony that her attendance at staff meetings had always been at the discretion of the acting postmaster[44] since she was not a management level employee. Her reassignment for the 2004 mail count was routine and lasted for only two weeks. She was asked to do the mail count once at the Lake Charles station rather than in Moss Bluff, but she testified that she did not know why she was asked to work in Lake Charles for that count. Hodge also testified that although she did not get the equipment that she needed from Wakefield, she did get the requested equipment. Hodge provides no evidence that any of these actions was punitive or resulted in demotion. To date, Hodge has not received a demotion, a change in working hours, duty station or a decrease in pay. Hodge has continued her employment at the Postal Service and has continued to receive pay at the proper pay grade. Accordingly, Hodge has failed to establish a prima facie case of an adverse employment action and her retaliation claim fails as a matter of law.[45] Based upon the foregoing, Summary Judgment [doc. 14] will be granted and the plaintiff's Title VII claims will be dismissed.

Second Motion for Summary Judgment

The United States filed a second Motion for Summary Judgment [doc. 15] arguing that the

---

[43]    Because there is no adverse employment action, the court need not discuss the causal link component.

[44]    Hodge depo. pp. 118-120.

[45]    *Harper v. City of Jackson Municipal School Dist.*, 149 Fed.Appx. 295, 298-303, 2005 WL 2404813, **3 (C.A.5 (Miss. - 8 (C.A.5 (Miss. (C.A.5 (Miss.), 2005).

12

plaintiff's complaint should be dismissed because she failed to timely exhaust her administrative remedies. An employee asserting a federal sector employment discrimination claim must do so within 45 days of the alleged discriminatory act.[46] The United States asserts that, taking all of the plaintiff's assertions as true for the purpose of this motion, she describes little or no interaction with Wakefield during the relevant 45 day time period preceding her filing a complaint with the EEO counselor.

Hodge claims a continuing violation which allegedly began in 1999 and continued through February 2003. Hodge contacted an EEO counselor on February 27, 2003. There is testimony that Wakefield showed Hodge a magazine with a woman in a leather bikini in February 2003. During the EEOC hearing, Hodge complained that Wakefield came into her office daily, asked her out regularly, and touched her routinely throughout the four year time period.

The Fifth Circuit has consistently held that the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts.[47] Under the continuing violations doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period, if the plaintiff can show a series of related acts, one or more of which falls within the limitations period.[48] The end goal of the

---

[46]   29 C.F.R. § 1614.105(a)(1).

[47]   *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir.2003); *see also Huckabay v. Moore,* 142 F.3d 233, 238-39 (5th Cir.1998).

[48]   *Felton v. Polles,* 315 F.3d 470, 487 (5th Cir.2002) ( *citing Messer v. Meno,* 130 F.3d 130, 135 (5th Cir.1997)).

continuing violation theory is to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely."[49]

The Supreme Court clarified the limits of the continuing violations doctrine in *Nat.'l R.R. Passenger Corp. v. Morgan.* The Court held that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.[50] Thus, each discriminatory act starts a new clock for filing charges alleging that act.[51] In contrast to discrete acts, the Court carved out an exception for claims based on a hostile work environment. Noting that repeated conduct constitutes a part of the nature of hostile environment claims, the Court held that hostile environment claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period."[52] Therefore, *Morgan* makes clear that claims based on discrete acts are timely only where such acts occurred within the limitations period, and that claims based on hostile environment are only timely where at least one act occurred during the limitations period.[53]

Hodge has claimed a continuing violation, with the latest alleged act occurring in February,

---

[49]    *Celestine v. Petroleos de Venezuela SA,* 266 F.3d 343, 352 (5th Cir.2001); *see also Hardin v. S.C. Johnson & Son Inc.,* 167 F.3d 340, 344 (7th Cir.1999).

[50]    536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

[51]    *Id.*

[52]    *Id.*

[53]    *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 279 -280 (C.A.5 (Tex.), 2004).

14

2003, the same month that she filed a complaint with the EEOC counselor. Based upon this allegation, there is a genuine issue of material fact which precludes summary judgment on the United States's timeliness claim.

Lake Charles, Louisiana, this 20 day of September, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE